**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASSANDRA BONAIR BOSLEY,
individually and on behalf of all others
similarly situated,
    Plaintiff,

vs.

A BRADLEY HOSPITALITY LLC d/b/a LA
MESA MIAMI
    Defendants.

_____/

CASE NO. 1:25-CV-22336

Hon. Beth Bloom

Civil Division

**MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

The DEFENDANT, A BRADLEY HOSPITALITY LLC d/b/a LA MESA MIAMI, moves this HONORABLE COURT pursuant to Order on Default Procedures [D.E. 7] and Rule 12(b)(1)-(6) and Rule 12(f) to dismiss and/or strike the Complaint [D.E.1] and states:

1. Plaintiff's Complaint seeks relief pursuant to the Telephone Consumer Protection Act (TCPA) 47 U.S.C. s. 227 and cites 47 CFR 64.1200 in support (both are attached hereto as an appendix).

2. The Complaint seeks relief based on two counts of statutory violations of the TCPA: 1) 47 U.S.C. 227 and 2) 47 U.S.C. 227(c)(5) associated with receiving seven text messages[1] between Dec. 31 and Feb. 18, five of which the reply of "No stop" was sent in English in response to the directive of "STOP to end" and a hyperlink to the Defendant's website LaMesa.com (which contains a contact link).

3. The Complaint concedes that the Plaintiff failed to opt-out from receiving the text messages as directed. (See paragraph #14 and #16 of the Complaint [D.E. 2] where Plaintiff replied "No

_____

[1] The text messages are in Spanish with the exception of the directive "STOP to end" and purport to qualify as a solicitation, however the translation is not provided. The Plaintiff's reply of "No Stop" is provided is in English.

stop" rather than "Stop" as directed.)

4. Plaintiff alleges damages for: "[A]ctual harm, including invasion of per privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion… inconvenienc[e], … disruption to her daily life.  Defendant's unwanted telemarketing caused Plaintiff actual harm.  Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages.  Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message…. wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted calls.  In all, Defendant's violations of the TCPA caused Plaintiff to waste at least fifteen minutes of her time in addressing and attempting to stop Defendant's solicitations".  See #37, #38, and #39 of the Complaint [D.E.1].

5. Plaintiff seeks damages of $500 per violation of the TCPA, class certification, and an injunction.

## QUESTION PRESENTED

6.  The question before the Court is whether or not the Plaintiff has pled a valid cause of action for a violation of the TCPA for text messages sent after allegedly replying "No Stop" to five of the seven messages sent to her.    The Plaintiff does not have Article III Standing and the Plaintiffs reply of "No Stop" in response to "STOP to end" was an expression of consent to the messages.

## LEGAL ANALYSIS

7. *Eldridge v. Pet Supermarket, Inc.*, Case No. 18-22531-CIV-Williams presented facts nearly identical to the facts before the Hon. Kathleen Williams in March of 2020.  The same matter was later filed in the state court and dismissed on similar grounds. See Pet Supermarket v. Troy

2

Eldridge, 360 So.3d 1201, 3rd DCA, 2023) Both Judge Williams order and the Opinion from the Third District are attached hereto in the Appendix.

8. The analysis herein supports Defendant's motion to strike the pleadings or otherwise direct the Plaintiff to show cause why the matter should not be stricken for the basis stated therein by Judge Williams (and Judge Lobree).

9. The Plaintiff does not allege and cannot establish Article III Standing.

10. The Supreme Court explained in Spokeo, Inc. v. Robins, 578 St. Ct. 1540, 1547-1548  (2016):

> [T]he "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130.  The plaintiff must have:
>
> (1) suffered an injury in fact,
> (2) that is fairly traceable to the challenged conduct of the defendant, and
> (3) that is likely to be redressed by a favorable judicial decision. Id., at 560–561, 112 S.Ct. 2130 ; Friends of the Earth, Inc., 528 U.S., at 180–181, 120 S.Ct. 693.
>
> The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/ PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Warth*, supra, at 518, 95 S.Ct. 2197.6
>
> …Injury in fact is a constitutional requirement, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Raines, supra, at 820, n. 3, 117 S.Ct. 2312 ; see *Summers v. Earth Island Institute*, 555 U.S. 488, 497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) ; *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) ("In no event ... may Congress abrogate the Art. III minima").
>
> To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130 (internal quotation marks omitted). We discuss the particularization and concreteness requirements below.
>
> For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." Ibid., n. 1; see also, e.g., *Cuno*, supra, at 342, 126 S.Ct.

1854 (" 'plaintiff must allege personal injury' "); *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (" 'distinct' "); *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("personal"); *Valley Forge*, supra, at 472, 102 S.Ct. 752 (standing requires that the plaintiff " 'personally has suffered some actual or threatened injury' "); *United States v. Richardson*, 418 U.S. 166, 177, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (not "undifferentiated"); *Public Citizen, Inc. v. National Hwy. Traffic Safety Admin.*, 489 F.3d 1279, 1292–1293 (C.A.D.C.2007) (collecting cases).7

Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete." Under the Ninth Circuit's analysis, however, that independent requirement was elided. As previously noted, the Ninth Circuit concluded that Robins ' complaint alleges "concrete, de facto " injuries for essentially two reasons. 742 F.3d, at 413. First, the court noted that Robins "alleges that Spokeo violated his statutory rights, not just the statutory rights of other people." Ibid. Second, the court wrote that " Robins's personal interests in the handling of his credit information are individualized rather than collective ." Ibid . (emphasis added). Both of these observations concern particularization, not concreteness. We have made it clear time and time again that an injury in fact must be both concrete and particularized. See, e.g., *Susan B. Anthony List v. Driehaus*, 573 U.S. ——, ——, 134 S.Ct. 2334, 2341–2342, 189 L.Ed.2d 246 (2014) ; *Summers*, supra, at 493, 129 S.Ct. 1142 ; *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 274, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) ; *Massachusetts v. EPA*, 549 U.S. 497, 517, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007).

A "concrete" injury must be "de facto "; that is, it must actually exist. See Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term—"real," and not "abstract." Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967). Concreteness, therefore, is quite different from particularization.

11. Standing is jurisdictional and may be raised by a Motion to Dismiss a complaint under R. 12(b)(1). See *Stalley v. Orlando Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir., 2008).  A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice. Id. citing, Crotwell v. Hockman-Lewis Ltd., 734 F.2d 767, 769 (11th Cir.1984). In reviewing the district court's decision to grant a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), we review the legal conclusions of the district court de

novo. Stalley at 1233 citing McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d 1244, 1250 (11th Cir.2007).

12. A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. Id., at 1251. "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Id., at 1233-1234.

13. By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony. Id., at 1234.

14. Affirmative defenses that appear clear on the pleadings support dismissal of the complaint. See Clark v. Amoco Prod. Co., 794 F.2d. 967, ,970 (5th Cir., 1986).

<u>*The Text Messages are not Advertisements*</u>

15. Seven Text Messages over the course of three months are alleged in the Compliant (see paragraphs 14 and 16).   The first text message on Dec. 31 is not translated and warrants (dismissal without prejudice on that basis alone). However, for the sake of argument, it merely announces that there is movie night and comedy without providing a date, time, or price.  There is no "call to action".  The same announcement without a "call to action" is specified in the second text message.  The third message provides a date, and announcement that a table will be given away on Feb. 14 for free to VIP clients.  See paragraph 14 of the Complaint [D.E.1].

16.  The last four texts are also merely announcements without any "call to action".  See paragraph 16 of the Complaint [D.E. 1].

17. The allegations before the court are that the text messages sent qualify as an "advertisement"

without express consent in violation of 47 CFR 64.1200.

18. TCPA defines "advertisements" as any material advertising the commercial availability or quality of any property, goods, or services".  See 47 CFR 64.1200 (f).

19. The seven text messages do not specify the availability or quality of the "shows" being advertised and are therefore not "advertisements" and are merely informational.

*Concrete Injury*

20.  Like the Plaintiff in Eldrige v. Pet Supermarket, Inc., the Plaintiff before this Court did not allege a concrete injury.

21. The Plaintiff merely alleged the conclusory term "actual harm" in paragraphs #37 and #38 of the Complaint and claims an "invasion of privacy" and "annoyance" through the use of duplicitous phrases.  See Paragraph #37.

22. The Plaintiffs rationale suggesting that seven text messages sent over the course of three months announcing different events are not "qualitatively the kind of harm that constitutes injury in fact (by advertising)".  See Eldrige citing Salcedo v. Alex Hanna, 936 F.3d 1162 (11th Cir. 2019) (In Muccio v. Glob. Motivation, 23-10081, (11th Cir. Aug. 2023 the court vacated Salcedo, however the facts are distinguishable.  There were five text messages in that matter sent for the sale of consumer goods sent to over 100 people and the court determined that such an advertisement could be an "intrusion upon seclusion").

23. Analogous to the reasoning in Eldrige, a few seconds to read a small message spread over months requires more to establish a concrete harm.  See Eldrige p. 12.

24.  Lastly, the the Compliant also fails to make mention to the evident affirmative defense provided by 47 U.S.C 227(c)(5) which provides:

It shall be an affirmative defense in any action brought under this paragraph that the defendant

has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

25.  47 CFR 64.1200(a)(10) provides that:

"A called party may revoke prior express consent, including prior express written consent, to receive calls or text messages made pursuant to paragraphs (a)(1) through (3) and (c)(2) of this section by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender. Any revocation request made using an automated, interactive voice or key press-activated opt-out mechanism on a call; using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" sent in reply to an incoming text message;…. If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts. If a reply to an incoming text message uses words other than "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe," the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent. Should the text initiator choose to use a texting protocol that does not allow reply texts, it must provide a clear and conspicuous disclosure on each text to the consumer that two-way texting is not available due to technical limitations of the texting protocol, and clearly and conspicuously provide on each text reasonable alternative ways to revoke consent. All requests to revoke prior express consent or prior express written consent made in any reasonable manner must be honored within a reasonable time not to exceed ten business days from receipt of such request. Callers or senders of text messages covered by paragraphs (a)(1) through (3) and (c)(2) of this section may not designate an exclusive means to request revocation of consent."

26. Plaintiff concedes in its paragraphs #14 and #16 to replying to the text messages with the phrase "No stop" in English just after being directed to type "STOP to end" if she wanted the text messages to stop.

27. "No" preceded "stop" conveying that the Defendant not "stop," but rather continue.

28. The Plaintiff's directive to Defendant "no stop" implied to Defendant an express consent to "keep going" or continue providing the text messages.  The express consent to receive the subsequent messages precludes the Plaintiff's recovery.

WHEREFORE, for the reasons stated herein, it is moved that the matter be dismissed.

**Certificate of Service**

      I certify that a copy of the foregoing was served on July 8, 2025 upon filing in CM/ECF electronic filing system to the parties include on the attached service list.

> /s/Matthew E. Ladd, Esq., 668151
> Matthew E. Ladd, P.A.
> 4649 Ponce De Leon Blvd., Suite 301
> Coral Gables, FL 33146
> T: 305-665-3978
> C: 305-984-4649
> Attorney for the Defendants

SERVICE LIST

Shamis & Gentile, P.A.
Andrew J. Shamis, Esq. Florida Bar # 101754
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

EDELSBERG LAW, P.A.
Scott Edelsberg, Esq. Florida Bar No. 0100537
Scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

Counsel for Plaintiff and the Class.

# APPENDIX I
# 47 U.S.C. 227 Highlighted with 47 CFR 64.1200